UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAMIKA HOWARD as
personal representative of the
ESTATE OF JOICE HOWARD,
    Plaintiff,

                Case No. 14-12350
   v.            HON. TERRENCE G. BERG

DEPUTY NICK RAINWATER, et. al.,
    Defendants.
                /

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 58)**

On June 19, 2014, Defendants Officer Joshua Belanger and Sergeant Aaron Quinn of the Grand Blanc Township Police Department arrested Plaintiff decedent Joice Howard and took her to the Genesee County jail pursuant to an outstanding warrant. Three days later, Ms. Howard—who suffered from seizures—died due to internal bleeding. Camika Howard, as personal representative of Ms. Howard's estate, subsequently filed suit alleging that Defendants violated Ms. Howard's constitutional rights by delaying the provision of medical care. On January 4, 2016, Defendants filed this motion for summary judgment. (Dkt. 58). For the reasons explained below, Defendants' motion for summary judgment is **GRANTED** as to Counts III and IX. And because the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claim, Count VIII is **DISMISSED WITHOUT PREJUDICE**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 2014, Joice Howard, a 60-year old woman from Flint, Michigan, visited a sick relative at Genesys Hospital in Flint with her fiancé John Clark. (Dkt. 44, p. 3). Because of a previous fall, Ms. Howard was in a wheelchair and wearing a cast on one foot. (Dkt. 59, p. 3). Also visiting the hospital that day were Mr. Clark's sister and niece, Giajuana Clark and Shawn Clark. (Dkt. 58, p. 1).

At around 7:45 p.m., Ms. Howard, John Clark, Giajuana Clark, and Shawn Clark stepped outside of the hospital for a smoking break. (Dkt. 59, p. 1). Once outside, Mr. Clark realized that he had locked his keys inside of his vehicle, a 1988 Dodge Caravan. (Giajuana Clark Dep., Dkt 58, Ex. 1; Police Report, Dkt. 58, Ex. 4). Seeking to retrieve his keys, Mr. Clark contacted hospital security guards who advised him to call the police. (Shawn Clark Dep., Dkt. 58, Ex. 5, 19:21-20:17). He did so promptly. (Giajuana Clark Dep., at 18:1-4).

Around 7:50 p.m., Officer Belanger arrived at Genesys Hospital's parking lot. (Police Report, at p. 2). Before opening Mr. Clark's van[1], Officer Belanger obtained Mr. Clark's identification in order to verify Clark's ownership of the vehicle via a search on the Law Enforcement Information Network ("LEIN"). (Belanger Dep., Dkt. 58, Ex. 2, 18:6-14). The LEIN search revealed that Mr. Clark had an outstanding warrant for driving under the influence. (Police Report, at p. 2). While

---

[1] Officers consider this type of assistance as a "Slim Jim" call. (Quinn Dep., Dkt. 58, Ex. 3, 26:11-23). A Slim Jim is a "long rod, [that] pries the door away from the body of the car." (*Id*. at 27:3-4).

Officer Belanger was conducting the LEIN search, Mr. Clark ran away. (Belanger Dep., at 18:14-17). Officer Belanger chased after him, caught him, and placed him under arrest for his outstanding warrant. (Police Report, at p. 2).

Officer Belanger then turned his attention to Ms. Howard, who told him that she was Mr. Clark's wife and provided him with her identification. (Belanger Dep., at 20:25-21:4; Police Report, at p. 2). Although Ms. Howard did not interfere with Mr. Clark's arrest (Belanger Dep., at 22:25-23:4), Officer Belanger ran a LEIN search on Ms. Howard as well, purportedly because she told the officer that she wanted to take the van home herself. (*Id.* at 22:1-10). Shawn Clark, who was present at the scene along with Giajuana Clark, denies that Ms. Howard told Officer Belanger that she could take the vehicle. (Shawn Clark Dep., at 27:9-12). In any case, the LEIN search showed that Ms. Howard also had an outstanding warrant for driving under the influence. (Police Report, at p. 2).

At 8:00 p.m., Sergeant Quinn arrived to assist Officer Belanger in effecting the arrests of Mr. Clark and Ms. Howard. (*Id.*) The officers provided somewhat differing accounts of how they decided to take Ms. Howard to jail. According to Belanger, the decision to arrest Ms. Howard was automatic because, at the time, the department had a policy of taking everyone with a warrant for drunk driving to jail. (Belanger Dep., at 28:18-29:3). In contrast, Quinn claims that they called the jail to confirm the warrant and "see if they would take them." (Quinn Dep., at 36:17-24).

3

After Defendants decided to arrest Ms. Howard, Shawn Clark claims that she told the officers that Ms. Howard "is sickly. She [has] seizures." (Shawn Clark Dep., at 32:12-16). Giajuana Clark also remembers telling the officers that Ms. Howard suffered from seizures. (Giajuana Clark Dep., at 21:22-25). In addition, Mr. Clark, Giajuana Clark, and Shawn Clark informed the officers that Ms. Howard needed her seizure medication. (*Id.* at 28:15-16; Shawn Clark Dep., at 32:18-19). Officer Belanger does not remember anyone telling him that Ms. Howard suffered from seizures or needed her medication. (Belanger Dep., at 23:10-25). Sergeant Quinn recalls that Ms. Howard told him that she needed medicine and suffered from seizures. (Quinn Dep., at 31:18-25). According to Giajuana Clark, Sergeant Quinn told Mr. Clark that Ms. Howard would receive her medications in jail. (Giajuana Clark Dep., at 32:12-17).

At no point during the arrest did Ms. Howard suffer from a seizure (*id.* at 30:20-22; Quinn Dep., at 42:5-10; Shawn Clark Dep., at 32:22-24.) and apart from her injured foot, she did not appear sick (Shawn Clark Dep., at 32:25-33:6; Giajuana Clark Dep., 49:2-3). Nonetheless, Shawn Clark believed that Ms. Howard needed medical attention because she smelled like alcohol and looked tired.[2] (Shawn Clark Dep., at 34:2-25).

Prior to the arrest, when Ms. Howard was still inside the hospital, Shawn Clark had attempted to convince Ms. Howard to seek medical attention but Ms.

---

[2] Officer Belanger testified that he did not smell alcohol on Ms. Howard. (Belanger Dep., at 23:5-7).

4

Howard declined it. (*Id.* at 35:1-5). There is no evidence in the record that Ms. Howard or anyone else requested medical attention during the arrest.

At some point during the arrest, Giajuana Clark attempted to wheel Ms. Howard back into the hospital but Sergeant Quinn stopped her. (Giajuana Clark Dep., at 29:8-12). Giajuana Clark tried to take Ms. Howard back to the hospital because Ms. Clark wanted to return to their sick relative, who had just had cancer surgery. (*Id.* at 46:7-10).

Ultimately, Sergeant Quinn transported Ms. Howard to jail while Officer Belanger transported Mr. Clark. (Belanger Dep., at 32:12-16). The drive from the hospital to the jail took 15 minutes (Quinn Dep., at 37:15-17) and both Ms. Howard and Mr. Clark were lodged at the Genesee County jail by 9:00 p.m. (Police Report, at p. 2). Upon arrival, Ms. Howard was medically screened and jail officials noted that she suffered from seizures and took seizure medication. (Genesee County Jail Medical Intake Form, Dkt. 66, Ex. 1).

The next day, June 20, 2014, Ms. Howard had a seizure at 12:40 p.m. (Dkt. 44, p. 7). After a number of additional seizures, she was taken to the Hurley Medical Center in Flint. (*Id.* at p. 10). She died two days later. (*Id.* at p. 11). The autopsy determined that Ms. Howard died from hemoperitoneum caused by internal bleeding, among other factors. (Dkt. 58, at p. 4). According to Plaintiff's expert, Doctor Albert Weihl, Ms. Howard's life could have been saved had she received proper medical care on June 19 or 20. (Dkt. 59, Ex. 11).

On June 6, 2014, Camika Howard filed suit on behalf of Ms. Howard's estate. (Dkt. 1). On July 21, 2015, she filed an amended complaint adding Officer Belanger and Sergeant Quinn. (Dkt. 44). On December 11, 2015, Plaintiff stipulated to the dismissal of her claims against all Defendants except for Belanger and Quinn. (*See* Dkt. Nos. 56-57). Accordingly, the only counts pending before the Court are Counts III[3] and IX for deliberate indifference to a serious medical need against Officer Belanger and Quinn respectively, and Count VIII for gross negligence, also against both officers. On January 4, 2016, Defendants filed for summary judgment. (Dkt. 58). The Court heard oral argument on April 26, 2016.

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec.*

---

[3] In Count III, Plaintiff also complains that Officer Belanger performed an unconstitutional LEIN search on Ms. Howard.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)).

## B. Discussion

Defendants rely on qualified immunity as a defense against Plaintiff's claims. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Courts apply a two-pronged test to determine whether a police officer is entitled to qualified immunity: "[1] whether the officer's conduct violated a constitutional right, and [2] whether that right was clearly established at the time of the incident." *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 914-15 (6th Cir. 2016)

(internal citation omitted). The two prongs are independent of each other and courts have discretion to analyze them in any order. *Id.*

The Court will address each of Plaintiff's claims in turn, beginning with her Eighth Amendment claim.

### 1. Deliberate Indifference to a Serious Medical Need

Defendants do not contest that Ms. Howard had a clearly established right to be free from deliberate indifference to a serious medical need. As a result, Defendants' entitlement to qualified immunity turns on whether they violated this right.

At the summary judgment stage, the Court must view the facts in the light most favorable to the non-moving party, and "the plaintiff bears the burden of showing that a clearly established right has been violated and that the official's conduct caused that violation[.]" *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (internal citation omitted).

"The Due Process Clause of the Fourteenth Amendment requires government officials to provide adequate medical care to individuals injured while being apprehended by police." *Scozzari v. Miedzianowski*, 597 F. App'x 845, 848 (6th Cir. 2015). An arrestee's Due Process rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Public officials violate the Due Process clause by acting with "deliberate indifference" to an arrestee's "serious medical needs." *See*

8

*Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). To bring a claim of deliberate indifference, a plaintiff must meet both objective and subjective components. *Id.*

### *a. Objective Component*

Under the objective component, a plaintiff must show the existence of a "sufficiently serious" medical need. *Id.* A plaintiff can meet this prong through evidence of an obvious need for medical care, or by establishing the detrimental effect of a delay in obtaining medical care for a non-obvious condition.

(i) <u>Obviousness Standard</u>

Under the "obviousness standard," a sufficiently serious medical need is one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 897 (citing *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)). Where a plaintiff presents facts of an obvious medical condition, he need not present medical evidence verifying that the delay in medical treatment led to an adverse health outcome. *Id.* at 900. In these cases, "it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment and that the need was not addressed within a reasonable time frame." *Id.*

It is unquestionable that on the night that she was arrested, Ms. Howard suffered from poor health. She was afflicted with seizures, was wheel-chair bound, and was wearing a cast on one of her feet. Further, viewing the facts in the light

9

most favorable to the non-moving party, the officers knew that she was "sickly" and had seizures. (Shawn Clark Dep., at 32:12-16; Giajuana Clark Dep., at 21:22-25). They were also told that she did not have her seizure medication with her, and that she needed it. (Shawn Clark Dep., at 32:18-19; Giajuana Clark Dep., at 28:15-16). However, the inquiry at issue is not whether Ms. Howard suffered from poor health in general, but whether it was obvious that she was suffering from a serious medical condition necessitating prompt medical attention *during her arrest*. During that time—from 7:50 p.m. when Officer Belanger arrived at the Genesys Hospital parking lot, to 9:00 p.m., when she was booked in jail—Ms. Howard did not have a seizure or exhibit any symptoms associated with seizures. Nor is there any evidence that Ms. Howard, or anyone else on her behalf, requested medical attention.

In fact, the record reflects that Ms. Howard appeared to be in stable condition during her arrest. Both Shawn Clark and Giajuana Clark recall that, apart from her injured foot, Ms. Howard did not appear sick. (Shawn Clark Dep., at 32:25-33:6; Giajuana Clark Dep., at 49:2-3). Although Shawn Clark stated during deposition that Ms. Howard smelled of alcohol and looked tired, Ms. Clark also remembers that Ms. Howard refused to seek medical attention while inside the hospital. (Shawn Clark Dep., at 35:1-5). And although Giajuana Clark attempted to wheel Ms. Howard back inside the hospital, she testified that she did so not to procure

10

medical attention for Ms. Howard, but rather to see her nephew who had just had surgery. In her deposition, Giajuana Clark stated:

> Q. All right. What was your purpose in trying to wheel Joice back in the hospital?
>
> A. Well, it wasn't really—Basically I wasn't even . . . I was like she just can't go to jail. You know, he was like "She going—Stop." My purpose was just to get up there to see my nephew after surgery.

(Giajuana Clark Dep., at 46:5-10). There is simply no evidence in the record to support a finding that Ms. Howard was suffering from an obvious health problem or serious condition necessitating medical attention during her arrest.[4]

### (ii) Delay in Administering Medication

A plaintiff can also show a sufficiently serious medical need based on "the effect of delay in treatment." *Blackmore*, 390 F.3d at 897. These claims are distinct from claims involving an "obvious" need for medical care. *Id.* Examples include complaints of "minor maladies or non-obvious complaints of a serious need for medical care," or claims of "delayed administration of medication[.]" *Id.* at 897-98. In these cases, a plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *See id.* (citing *Napier v. Madison County*, 258 F.3d 739, 742 (6th Cir. 2001)).

---

[4] Plaintiff also argues that Ms. Howard was suffering from internal bleeding when she was arrested. Because internal bleeding is not an obvious condition, Plaintiff needed to provide evidence of outward physical manifestations of the internal bleeding to show an obvious need for medical attention. The record does not contain any evidence on this point.

Plaintiff has not provided verifying medical evidence that Ms. Howard suffered a detrimental health effect from not receiving medicine during her arrest. Plaintiff has provided a report from Dr. Albert Weihl, who concluded that:

> "[h]ad Ms. Joice been provided appropriate medical attention on June 19 or the morning of June 20, her underlying serious medical conditions could have been diagnosed, stabilized, and treated, thereby saving her life."

(Dkt. 59, Ex. 11). Dr. Weihl's report does not discuss whether Ms. Howard suffered an adverse effect from not receiving her seizure medication during the 70 minutes that she was in Defendants' care. And the report only refers to the lack of appropriate medical attention, not to the lack of medication. As discussed above, there is no evidence in the record that Ms. Howard requested medical attention, medication, or treatment while in Defendants' care. Further, Defendants did not have access to Ms. Howard's medication during the arrest and there is no evidence that they prevented her from obtaining medication. In the absence of verifying medical information, Plaintiff cannot show a serious medical need based on a delay of medication theory.

### b. Subjective Component

Under the subjective component, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A subjectively indifferent state of mind is "more blameworthy than negligence" but does not require acts or omissions for the purpose "of causing harm or with

12

knowledge that harm will result." *Id.* at 835. Additionally, a plaintiff does not need to show that a public official "knew of an 'emergency situation.'" *Parsons v. Caruso*, 491 F. App'x 597, 602-03 (6th Cir. 2012). A plaintiff must show only that the defendant "subjectively perceived facts from which to infer *substantial risk*" to the plaintiff and that the defendant "did in fact draw that inference." *Id.* at 603 (emphasis in original).

In *Parsons*, the Sixth Circuit held that a prison nurse was subjectively indifferent to an inmate's serious medical needs where she delayed in providing seizure medication to a new inmate despite knowing that he suffered from seizures, required seizure medication, and had gone without his medication for at least 24 hours. 491 F. App'x at 603-04. Although she had the inmate's medication in stock, the nurse instead chose to order it from a pharmaceutical company, resulting in a two-day delay. *Id.* at 600. Three days after his arrival at the prison, the inmate died from seizures, without a trace of anti-seizure medication in his system. *Id.*

Here, Defendants were aware that Ms. Howard suffered from seizures and did not have her medication with her at the time of her arrest. But, as explained above, Ms. Howard's condition appeared stable and she was not suffering from an obvious medical need. As for her medication, Sergeant Quinn told Giajuana Clark that Ms. Howard would receive it in jail, (Giajuana Clark Dep., at 32:12-17) which was only a 15-minute drive from the Genesys Hospital parking lot. (Quinn Dep., at 37:15-17). There is no evidence that the officers delayed in taking Ms. Howard to

jail, and their entire interaction with her lasted a little more than an hour. And in contrast to *Parsons*, there is no evidence that Ms. Howard had gone without her medication for a significant period of time.

Further, it is undisputed that soon after Defendants left Ms. Howard at the jail, jail personnel promptly noted that she suffered from seizures and took seizure medication in the course of her intake screening. (Dkt. 66, Ex. 1). In sum, the record does not support a finding that Officer Belanger or Sergeant Belanger were aware of facts that Ms. Howard was facing a substantial risk of serious harm and that they indeed drew such an inference.

For the foregoing reasons, Plaintiff has failed to carry her burden of showing that Defendants violated a clearly established right. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's deliberate indifference claims in Counts III and IX.

### 2. LEIN Check

Along with the deliberate indifference claim, in Count III Plaintiff also alleges that Officer Belanger violated Ms. Howard's Fourth Amendment rights by running a LEIN check once he obtained her identification.

"A government official will be liable for the violation of a constitutional right only if the right was clearly established . . . in light of the specific context of the case." *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (internal citation and quotation marks omitted). "A right is clearly established if 'the contours of the

14

right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, pre-existing law must 'dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*'" *Walker v. Davis*, 649 F.3d 502, 504 (6th Cir. 2011) (emphasis in original) (citing *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir.2002)). "In determining whether a right was clearly established, we look first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal, and we ask whether these precedents placed the . . . constitutional question beyond debate." *Hearring*, 712 F.3d at 280 (internal quotation marks omitted).

The Court must thus determine whether it is clearly established that the use of a person's properly obtained information to run LEIN search constitutes a "search" under the Fourth Amendment. The Court finds that this right is not clearly established. In fact, existing precedent holds there is no right under the Fourth Amendment not to be subjected to a LEIN search.

In *U.S. v. Ellison*, the Sixth Circuit held that running a license plate number through the LEIN system did not amount to a "search" under the Fourth Amendment. 462 F.3d 557, 562 (6th Cir. 2006). The Sixth Circuit explained that as long as an officer "had a right to be in a position to observe the defendant's license

plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment." *Id.* at 563. The Court noted, "[t]he obvious purpose of maintaining law enforcement databases is to make information, such as the existence of outstanding warrants, readily available to officers carrying out legitimate law enforcement duties." *Id.* at 562. Accordingly, because the defendant's license plate number was in plain view and was "obtained without intruding upon a constitutionally-protected area," the Court held that running a LEIN check based on this information was not a "'search' for Fourth Amendment purposes." *Id.* at 562-63.

Furthermore, courts in this district have applied *Ellison* to hold that an officer's use of properly obtained information to run a LEIN search does not amount to a "search" under the Fourth Amendment. *See Brooks v. Pickett*, No. 06-15633, 2008 WL 937356 at *5 (E.D. Mich. April 7, 2008) ("Plaintiff also cannot argue the initial LEIN search on his wife's car, or the subsequent use of this information, was a 'search' under the Fourth Amendment.").

Here, it is undisputed that Ms. Howard voluntarily provided Officer Belanger her identification upon his request. Plaintiff's argument is that Officer Belanger improperly *used* her information to run a LEIN search. This argument is contrary to the authority of *Ellison*, because, having properly obtained Ms. Howard's information, the officer's "corresponding use of the information . . . does not violate the Fourth Amendment." *See Ellison*, 462 F.3d at 563.

16

At most, Plaintiff can show that Officer Belanger's running a LEIN check on Ms. Howard violated department policy. Sergeant Quinn testified that officers perform LEIN checks when a person has given "consent, broken a traffic law, [or when there is] some type of reasonable suspicion, [or] probable cause." (Quinn Dep., at 23:11-12). Plaintiff insists that Officer Belanger lacked a proper basis for running a LEIN check on Ms. Howard because she was cooperative and did not impede the arrest of Mr. Clark. Officer Belanger responds that he ran a LEIN check because Ms. Howard requested to take possession of the vehicle. Although it would appear unlikely that an elderly, wheelchair-bound woman with a cast on her foot would request to take possession of the vehicle, the improbability of this scenario misses the point.

At issue is not whether Officer Belanger followed departmental policy in running a LEIN check on Ms. Howard. In order to overcome Officer Belanger's defense of qualified immunity, Plaintiff must show that it is clearly established that the use of a party's lawfully obtained information to run a LEIN check can constitute an unconstitutional search. Because, as explained above, this right is not clearly established, Officer Belanger is entitled to qualified immunity as to this claim.

17

### 3. Gross Negligence

Under 28 U.S.C. § 1367, a district court has discretion to "decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction." *Weeks v. Portage Cty. Exec. Offices*, 235 F.3d 275, 280 (6th Cir. 2000). Having dismissed both federal claims, the Court declines to exercise supplemental jurisdiction over Count VIII, Plaintiff's state law claim for gross negligence.

### III.   CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED** as to Counts III and IX. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claim, and hereby **DISMISSES WITHOUT PREJUDICE** Count VIII.

SO ORDERED.


Dated:  August 16, 2016                                s/Terrence G. Berg
                                                       TERRENCE G. BERG
                                                       UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on August 16, 2016, using the CM/ECF system, which will send notification to all parties.

                                                       s/A. Chubb
                                                       Case Manager